IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Terry Maness, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> Jonathan Ozmint, Director, South ) <br> Carolina Department of Corrections, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 8:05-00783-HMH-BHH <br><br> **REPORT OF MAGISTRATE JUDGE** |

The plaintiff, a former state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff brought this action on March 30, 2005, seeking damages for alleged civil rights violations. Following an extension of time, the defendant filed an answer on March 24, 2005. On June 27, 2005, the plaintiff filed a motion for summary judgment. On July 29, 2005, the defendant filed a motion for summary judgment and a separate response to the plaintiff's motion for summary judgment. By order dated August 3, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was informed of the summary dismissal procedure and the possible consequences if he failed to respond to the motion. On August 25, 2005, the plaintiff filed a response to the defendant's motion.

**UNDERLYING FACTS**

The plaintiff is a former inmate with the South Carolina Department of Corrections ("SCDC").[1]  The defendant is the Director of the SCDC.  In his complaint, the plaintiff alleged that the defendant improperly deducted a portion of his inmate wages for payment of room and board and victim's assistance.  Additionally, the plaintiff alleged that the defendant improperly assessed a fee for medical services the plaintiff received after September 1, 2001.  The plaintiff alleged that these fees violate his constitutional rights.  He seeks a declaratory judgment and actual and punitive damages.

The defendant submitted the affidavit of Martha Kramer, the Director of Inmate Finance at the SCDC.  Attached to the affidavit are printouts from the plaintiff's trust fund account with the SCDC.  The printouts show that the plaintiff has had only nine deductions from his Cooper Trust Fund Account, for medical co-payments, at $2.00 each.  According to the printout, these deductions occurred between January 4, 2002 and September 23, 2003 (def.m.s.j. Ex. B).   The printouts also show that the plaintiff's "P.I. Private Sector Account," has had no deductions for the Victim's Fund or Room and Board since 1999 (def.m.s.j. Ex. C).  The printouts reflect that between July and November, 1999 there were monthly deductions from the plaintiff's account for room and board and a victim's compensation fund.

**APPLICABLE LAW**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

---

[1] From the record it appears that the plaintiff has been transferred to the custody of the South Carolina Department of Mental Health as a sexually violent predator.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

**ANALYSIS**

*Statute of Limitations*

The defendant contends that the plaintiff's claims with regard to the fees for room and board and victims' assistance are barred by the statute of limitations because they occurred more than three years prior to March 4, 2005.[2] The defendant also contends that any claims with regard to medical co-payments made prior to March 4, 2002 are barred by the statute of limitations.

There is no federal statute of limitations for section 1983 actions. Instead, the corresponding state statute governing personal injury actions applies in section 1983 actions. *Garrett v. Elko*, 120 F.3d 261 (4th Cir. 1997)(citing *Wilson v. Garcia*, 471 U.S. 261, 266-69 (1985)). Although the limitation period is borrowed from state law, the question of when a cause of action accrues under § 1983 remains one of federal law. *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995)(citing *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)).

The statute of limitations for personal injury causes of action arising in South Carolina is three years. *See* S.C. Code Ann. § 15-3-530(5). Under S.C. Code Ann. § 15-3-535, "the statute of limitations is triggered not merely by knowledge of an injury but by knowledge of facts, diligently acquired, sufficient to put an injured person on notice of the existence of a cause of action against another." *True v. Monteith*, 327 S.C. 116, 120, 489 S.E.2d 615, 617 (1997)(professional malpractice case).

The plaintiff does not allege that he was unaware that the funds were taken from his inmate account. He does allege that he filed internal grievances and then filed suit

---

[2] The "delivery" date under *Houston v. Lack*, 487 U.S. 266 (1988) for this action is March 4, 2005. *See*, Order filed March 30, 2005.

4

in state court which, apparently, was dismissed on immunity grounds [3] (comp. at 3).  He appears to argue that his Section 1983 claim was tolled during the pendency of the state court proceedings.  There are no specific allegations in the complaint as to when the plaintiff filed his grievances or when the state court action was commenced.  The plaintiff asserts in his response to the summary judgment motion that his state court proceeding was dismissed on January 25, 2005.  This action was filed on March 30, 2005.   In light of the fact that plaintiffs are required to pursue administrative remedies before filing actions under Section 1983, it is this court's view that it would be an inequitable result to hold that the statute of limitations had run while the plaintiff was doing that which he was required to do.  Accordingly, the plaintiff's action is not barred by the statute of limitations.  *See Treat v. Bolger*, 837 F.2d 657 (4th Cir. 1988)(in statute of limitations analysis, the important consideration in determining whether statute is tolled in a 1983 action during the pendency of grievance proceedings is whether the action is a parallel proceeding that could be pursued simultaneously with a grievance proceeding).

***Due Process Claims***

The plaintiff alleges that the deductions from his account for room and board and victims' assistance and for medical co-payments violate his constitutional rights.  A prisoner has a protected property interest in his prison trust account.  *See Gillihan v. Shillinger*, 872 F.2d 935 (10th Cir. 1989) (holding that a prisoner stated a claim under § 1983 based on prison's assessment of transportation costs against his trust account); *cf. Washlefske v. Winston*, 234 F.3d 179 (4th Cir. 2000) (finding that limited property interest in prison trust account did not extend to any interest earned on that account).  Accordingly, a prisoner may not be deprived of those funds without minimum due process.  *See Mathews*

---

[3] In his complaint, the plaintiff alleges that his state court action was dismissed on January 5, 2005.

5

*v. Eldridge*, 424 U.S. 319, 332 (1976) (procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests).

Under South Carolina law, when an inmate is not ordered to pay restitution to a victim, or court-ordered restitution is paid in full, twenty percent of that inmate's wages must be paid to support victim's assistance programs. S.C. Code Ann. § 24-3-40(A)(2). Additionally, where an inmate does not have child support obligations, twenty-five percent of his wages "must be used by the Department of Corrections to defray the cost of the prisoner's room and board." S.C. Code Ann. § 24-3-40(A)(3).

The amounts which were deducted from the plaintiff's wages, therefore, were set by statute and paid according to the statutory requirements. There was no discretion exercised by the defendant (or his predecessors), nor can the amount deducted be changed because it was set by the Legislature. As the Supreme Court stated in *Mathews*, "due process is flexible and calls for such procedural protections as the particular situation demands." 424 U.S. at 334. The court went on to note:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

In a recent case, the Fourth Circuit Court of Appeals addressed a similar issue. *Slade v. Hampton Roads Regional Jail*, 407 F.3d 243 (4th Cir. 2005). In *Slade*, the court held that the deduction of one dollar a day from a pre-trial detainee's account to help defray housing costs did not violate the due process clause and did not require a pre-deprivation hearing. As the court noted, the jail has "a legitimate interest in attempting to

defray the costs of a prisoner's keep and a legitimate interest in the collection of the fee." 407 F.3d at 253. Moreover, as in this case, the court recognized that "there is also little risk of erroneous deprivation that a pre-deprivation hearing would ameliorate. The daily deduction of the charge from the prisoner's account is a ministerial matter with no discretion and minimal risk of error." *Id.* Likewise, in this case, the deduction for medical co-payments is purely ministerial and passes constitutional muster. The deduction of twenty percent for victim's assistance programs and twenty five percent for room and board requires only a mathematical calculation. There is scant chance of miscalculation. To provide an inmate a hearing each time such funds were deducted from an inmate's trust fund account would impose a tremendous administrative burden on the correctional system. Moreover, inmates are on notice that such deductions will be made. Accordingly, the deductions for victim's assistance programs and for room and board do not violate the plaintiff's due process rights.

Similarly, the plaintiff alleges that the deductions from his trust fund account for medical co-payments violate his due process rights. These deductions are made in accordance with SCDC Policy No. HS-18.17. Under this policy, co-payment fees for covered medical and dental services and for prescriptions are deducted from inmate accounts. The policy provides that inmates are notified of the established co-payment fee during orientation and by "posting in conspicuous locations throughout each SCDC facility." (def. m.s.j., Ex. D at 2).

While the law is clear that inmates must receive medical care while in prison,[4] a co-payment policy for inmates who are able to pay does not violate the Constitution. As in *Slade*, the requirement that inmates make medical co-payments is purely ministerial and does not violate the Due Process Clause of the constitution. *See Johnson v. Department*

---

[4]*Estelle v. Gamble*, 429 U.S. 97 (1976).

7

*of Public Safety and Correctional Services*, 885 F.Supp. 817 (D.Md. 1995) (holding that four dollar medical co-payment did not violate the Due Process Clause).

### *Ex Post Facto Clause*

The plaintiff also alleges that the required deductions from his account for victim's assistance programs, room and board, and medical co-payments violate the Ex Post Facto Clause of the United States Constitution. This clause, found in Section 10, Article One of the Constitution, merely provides that "No state shall ... pass any ... ex post facto Law." This prohibition has been universally recognized as applying "only to penal statutes which disadvantage the offender affected by them." *Collins v. Youngblood*, 497 U.S. 37, 41 (1990), citing *Calder v. Bull*, 3 U.S. 386, 390-92 (1798)(opinion of Chase, J.). In *Calder*, Justice Chase identified four categories of *ex post facto* laws:

> 1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes each action; 2nd. Every law that aggravates a crime, or makes it greater than it was when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender. All these, and similar laws, are manifestly unjust and oppressive.

3 U.S. at 390-391.

The plaintiff appears to argue that because he has been incarcerated since 1984, and the policy regarding deduction of medical co-payments was not enacted until 2001, it constitutes an *ex post facto* law because it "changed the quantum of the plaintiff's sentence." This argument is without merit. The charges for medical services (and for room and board and victim's assistance programs, for that matter) are clearly not punitive in nature. In *United States v. O'Neal*, 180 F.3d 115 (4th Cir.), *cert. denied*, 528 U.S. 980 (1999), the court applied a two part test in determining whether a law imposes punishment:

> The Court first asks whether the legislature's intent, as discerned from the structure and design of the statute along with any declared legislative intent, was to impose a punishment or merely to enact a civil or regulatory law.
>
> Second, even if the legislature did not intend to impose a punishment, a law still may be said to do so if the sanction or disability that it imposes is "so punitive in fact" that the law may not legitimately be viewed as civil in nature. A defendant faces a "heavy burden" in making a showing of such a punitive effect and can succeed only on the "clearest proof."

*Id.* at 122 (citations omitted); *see also United States v. Farrow*, 364 F.3d 551 (4th Cir. 2004). The statute and regulations in question here are clearly civil or regulatory in nature and cannot be considered punitive so as to invoke the *ex post facto* prohibition. This court notes as well that the policy itself provides that medical treatment may not be withheld if inmates are unable to pay, and there are certain medical conditions and services which are exempt from the payment requirement. Moreover, the affidavit of Martha Kramer, the SCDC Director of Inmate Finance, shows that the plaintiff was charged a two dollar co-payment on only nine occasions over a two year period. (Kramer aff. ¶ 3). Clearly, payment of eighteen dollars over a period of two years is not punishment within the meaning of *ex post facto* jurisprudence. *See also Slade*, 407 F.3d at 250 (finding that one dollar charge to pre-trial detainees for housing costs did not amount to punishment).[5]

## *Bill of Attainder*

The plaintiff also alleges that the application of the requirement that he pay for room and board, victim's assistance programs and medical co-payments violates the Bill of Attainder Clause, which provides that "No state shall ... pass any bill of attainder." U.S. Const. Art I, § 10, cl. 1. "A legislative act is an unconstitutional bill of attainder if it singles

---

[5] To the extent that the plaintiff is asserting an equal protection claim, this claim is also without merit. The plaintiff has made no showing that he has been treated differently from others similarly situated, that he is a member of a "suspect" class for equal protection purposes or that there is a "fundamental interest" involved. *See Johnson*, 885 F.Supp. at 820-21.

9

out an individual or narrow class of persons for punishment without a judicial proceeding." *Lynn v. West*, 134 F.3d 582, 594, n. 11 (4th Cir.). The same analysis used in *ex post facto* determinations is used in bill of attainder claims to determine whether or not a particular action amounts to "punishment." *O'Neal*, 180 F.3d at 122.

As discussed above, the provisions of S.C. Code Ann. §24-3-40 and the policy providing for deductions that inmates for medical co-payments do not constitute "punishment" in a constitutional sense. Accordingly, the plaintiff's Bill of Attainder claim is without merit.

*Qualified Immunity*

The defendant further argues that he is entitled to qualified immunity from suit in this case because his conduct did not violate any clearly established constitutional or statutory rights of which a reasonable person should have known. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.* Thus, in ruling on a defense of qualified immunity, a court must (1) identify the specific right allegedly violated; (2) determine whether at the time fo the alleged violation the right was clearly established; and (3) if so, determine whether a reasonable person in the official's position would have known that his action would violate the right. *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir.1992).

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was

clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public. *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

As set forth above, the plaintiff has not alleged the violation of any clearly established constitutional rights. Therefore, the defendant is entitled to qualified immunity.

***Eleventh Amendment Immunity***

When a defendant is sued in an official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989), the United States Supreme Court analyzed the interplay between §1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

*Id.* at 65 (citations omitted).

The Court noted that Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes." *Id*. at 70.  The Court held a "[s]tate is not a person within the meaning of §1983." *Id*.  The Court then held that a suit against state officials acting in their official capacities is actually against the state.  Thus, officials acting in their official capacity are also not "persons" within the meaning of that term as used in §1983.  Accordingly, state officials may only be sued in their individual capacities.  Thus, the defendant Ozmint, in his official capacity and as an arm of the State of South Carolina, is entitled to Eleventh Amendment immunity.[6]

*State Law Claims*

To the extent that the plaintiff's complaint can be perceived to state additional claims under state law, the court should decline to exercise supplemental jurisdiction over the claims as it is recommended that summary judgment be granted on the plaintiff's federal claims as set for above.  *See* 28 U.S.C. § 1367(c).

## CONCLUSION AND RECOMMENDATION

Wherefore, it is recommended that the motion for summary judgment filed by defendant Ozmint be granted.  It is further recommended that the plaintiff's motion for summary judgment be denied.

IT IS SO RECOMMENDED.

s/ Bruce H. Hendricks
United States Magistrate Judge

February 14, 2006
Greenville, South Carolina

---

[6] As pointed out by the defendant, he was not employed by the SCDC from 1997 - 1999, the time period to which some of the plaintiff's allegations relate.  As such, the defendant could not be held individually liable for any of the alleged constitutional violations which occurred during this time period.